**SECURITY BANK AND TRUST COMPANY, a Banking Corporation, Appellee,**

v.

**The FEDERAL NATIONAL BANK AND TRUST COMPANY OF SHAWNEE, a Banking Corporation, Appellant.**

**No. 48672.**

Court of Appeals of Oklahoma, Division No. 2.

April 13, 1976.

**120**

Warren L. Griffin, Midwest City, for appellee.

Eagleton, Nicholson, Pate & Gill, Oklahoma City, for appellant.

BACON, Presiding Judge.

This appeal involves the issue of whether appellant bank gave sufficient notice of

dishonor of a check (check number 655) within its statutory midnight deadline. Appellant gave oral (telephone) notice of dishonor and appellee contends written notice was required. Both parties moved for summary judgment on stipulated facts. The trial court found oral notice was insufficient and sustained appellee's motion for summary judgment.

The parties stipulated to the following facts:

"1. That with respect to check number 655, dated September 18, 1974, in the sum of $9,310.40:

(a) That check no. 655 was initially presented to the Federal Reserve Bank on Friday, September 20, 1974.

(b) That it was picked up by Mistletoe Express at approximately 9:00 p. m. on September 20, 1974.

(c) That it was delivered to defendant bank [appellant] on Saturday, September 21, 1974, before 6:30 a. m.

(d) That defendant gave the Federal Reserve Bank telephone notice of dishonor of said check on Tuesday, September 24, 1974.

(e) That check no. 655 was mailed by defendant to the Federal Reserve Bank on September 24, 1974, and received by the Federal Reserve Bank on September 25, 1974.

(f) That check no. 655 was presented to the Federal Reserve Bank the second time on Monday, October [sic] 30, 1974.

(g) That it was picked up by Mistletoe Express at approximately 9:00 p. m. on September 30, 1974.

(h) That it was delivered to defendant bank on Monday, October 1, 1974.

(i) That defendant gave telephone notice of dishonor to the Federal Reserve on Tuesday, October 2, 1974.

(j) That check no. 655 was mailed by defendant to the Federal Reserve Bank on Tuesday, October 2, 1974, and received by the Federal Reserve Bank on Wednesday, October 3, 1974."

Based upon the above-stipulated facts, depositions and evidence, the trial court made the following finding in its journal entry:

"The Court further finds based on evidence presented herein as to Check No. 655, the following:

"(1) That Monday, September 23, 1974, was the banking day of receipt for purposes of determining whether or not defendant acted within its midnight deadline; that Saturday, September 21, 1974, was not a 'banking day' based on the facts established in this case; that defendant bank acted within its midnight deadline.

"(2) That defendant bank complied with all the terms and provisions of 12A O.S. (1971) Section 4–301 except that portion of said statute under (1)(b) to-wit: that defendant bank failed to send written notice of dishonor or nonpayment as required by said statute; specifically the Court finds that oral telephone notice of dishonor and nonpayment given by defendant Bank prior to its midnight deadline on both occasions that check number 655 was presented is insufficient and fails to comply with 12A O.S. (1971) Section 4–301 and the Operating Letters of the Federal Reserve Bank of Kansas City.

"(3) That defendant bank is liable and accountable to plaintiff bank for check number 655 in the sum of $9,-310.40.

"The Court further finds that plaintiff claims attorney fees in its Petition, pursuant to Title 12 O.S. Section 936; that the Court finds that this cause of action falls under said statute and that attorney fees in the amount of $1500.xx should be awarded plaintiff."

Appellee states the question to be decided is "whether telephonic notice was authorized under the applicable Oklahoma

law and the Operating Letters of the Federal Reserve Bank."

■ Before we can determine if appellant's telephonic notice of dishonor was sufficient, we must first determine if appellant "acted" within its midnight deadline. We say this because if appellant acted *after* the midnight deadline, oral *or* written notice would not be sufficient in this case. This issue was not raised until appellee did so in the last proposition of its answer brief.

■ The check in question was received by appellant on Saturday, September 21, 1974, and appellant telephoned notice of dishonor on Tuesday, September 24, 1974. The Uniform Commercial Code 12A O.S.1971 § 4–301[1] gives appellant until its midnight deadline in which to dishonor an item. 12A OS.1971 § 4–104(1)(h) defines "midnight deadline" as follows:

" 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."

Section 4–104(1)(c) defines "banking day" as follows:

" 'Banking day' means that part of any day on which a bank is open to the public for carrying on substantially all of its banking functions."

The Uniform Commercial Code Comment following these sections states:

"Purposes:

1. Subsection (1)(c): 'Banking Day.' Under this definition that part of a business day when a bank is open only for limited functions, e.g., on Saturday evenings to receive deposits and cash checks, but with loan, bookkeeping and other departments closed, is not part of a banking day."

It is undisputed that on the Saturday in question only appellant's "paying and receiving" departments were open. All other departments, including bookkeeping, accounting, installment loan, and proofing were closed. We therefore conclude under these circumstances that the Saturday in question was not a banking day as defined under the above-quoted Oklahoma law. Since the following Monday (September 23, 1974) would be the day of receipt of the item, appellant's "midnight deadline" (as above defined) would be midnight of the next day, that is, midnight Tuesday, September 24, 1974. Appellant gave telephonic notice of dishonor on this Tuesday before midnight. We therefore conclude that appellant acted or telephoned notice of dishonor before its "midnight deadline," when it telephoned the Federal Reserve on Tuesday, September 24, 1974. There is no question as to whether appellant "telephoned" before its midnight deadline after

1. 12A O.S.1971 § 4–301 reads:
"(1) Where an authorized settlement for a demand item (other than a documentary draft) received by a payor bank otherwise than for immediate payment over the counter has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment (subsection (1) of Section 4–213) and before its midnight deadline it
  (a) returns the item; or
  (b) sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return.
"(2) If a demand item is received by a payor bank for credit on its books it may return such item or send notice of dishonor and may

revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in the preceding subsection.
"(3) Unless previous notice of dishonor has been sent an item is dishonored at the time when for purposes of dishonor it is returned or notice sent in accordance with this section.
"(4) An item is returned:
  (a) as to an item received through a clearing house, when it is delivered to the presenting or last collecting bank or to the clearing house or is sent or delivered in accordance with its rules; or
  (b) in all other cases, when it is sent or delivered to the bank's customer or transferor or pursuant to his instructions."

the second presentment of the check. We say this because the check was delivered to appellant on Monday, October 1, 1974, and appellant "telephoned" the Federal Reserve on Tuesday, October 2, 1974.

■ ' We will now turn to the main issue of this case, which, as stated by appellee, is "whether telephonic notice was authorized under the applicable Oklahoma law and the Operating Letters of the Federal Reserve Bank." No case deciding this issue has been brought to our attention, nor has our research disclosed one.

We think the positions of the parties can be fairly summarized and stated as follows. Appellee's position is that notice of dishonor by a payor bank must be in writing as required under 12A O.S.1971 § 4–301. Appellant's position is that notice of dishonor can be "oral" (by telephone) in accordance with an operating letter from the Federal Reserve Bank in effect at the time the transaction in question took place.

We find the operating letter in question authorizes appellant to give notice of dishonor by telephone.[2] At first glance it

2. Operating Letter No. 3, dated July 1, 1974, issued by the Federal Reserve Bank of Kansas City reads as follows:
"To Member Banks in the Tenth Federal Reserve District:
"1. Regulation J of the Board of Governors of the Federal Reserve System (hereinafter referred to as Regulation J), this operating letter, and our time schedules prescribe the terms and conditions upon which we will handle cash items for collection. This operating letter, our Operating Letter No. 3B, and our time schedules are issued pursuant to the provisions of Sections 4, 13, 14(e), and 16 of the Federal Reserve Act and the provisions of related statutes and in conformity with the provisions of Regulation J. All terms defined in Regulation J and used herein have the meanings stated in that regulation.
"2. Unless otherwise stated, all references to the Federal Reserve Bank of Kansas City, or "this bank", will include the Kansas City office and its branches at Denver, Oklahoma City, and Omaha.
"ITEMS WHICH WILL BE HANDLED AS CASH ITEMS
"3. Except as otherwise provided by this operating letter, the following items may be sent to this bank for handling as cash items in accordance with and subject to the provisions of Regulation J, of this operating letter, and of our time schedules:
  (a) Checks drawn upon any bank included in the current 'Federal Reserve Par List', which indicates the banks upon which checks are collectible through the Federal Reserve Banks (1) at par, and (2) in the time and manner provided in Section 210.9(a) of Regulation J. Such list is furnished from time to time and supplemented each month to show changes subsequent to the last complete list.
  (b) Government checks, postal money orders, and food coupons.

  (c) Such other demand items, collectible at par in funds acceptable to the Federal Reserve Bank of the District in which such items are payable, as we may be willing to accept as cash items.
"4. Whenever any instrument is accepted by us for credit to our own account, the account of another Federal Reserve Bank, or any account on our books, we will handle the instrument as a cash item if it would have been a cash item but for the fact that it was not sent to us by a sender.

"UNIFORM INSTRUCTIONS REGARDING PROTEST AND ADVICE OF NONPAYMENT
"18. Except as provided in paragraph 19 hereof, all Federal Reserve Banks will receive, handle, and forward cash items subject to the following uniform instructions regarding protest and wire advice [4] of nonpayment, except that Government checks will not be protested; and any contrary or special instructions noted on cash letters or otherwise transmitted with cash items will be disregarded:
  (a) PROTEST any dishonored item of $2,500 or over:
  (i) which appears on its face to have been drawn at a place which is not within any State, unless it bears on its face the A.B.A. no-protest symbol of a Federal Reserve Bank or of a preceding bank endorser, or
  (ii) which bears on its face the legend, 'PROTEST REQUIRED', of a Federal Reserve Bank or of a preceding bank endorser.
  (b) DO NOT PROTEST:
  (i) any item of less than $2,500, or
  (ii) any item of $2,500 or over unless it is protestable under subparagraph (a).
  (c) WIRE ADVICE of nonpayment of any item of $2,500 or over, unless it has not been paid because of a missing, irregular or unsatisfactory endorse-

would appear § 4–301, requiring written notice of dishonor, is in direct conflict with the operating letter which authorizes notice of dishonor by telephone.

■ Appellee argues that the operating letters are not to change substantive law. The thrust of appellee's argument to support the judgment of the trial court is that if oral notice under the Federal Reserve operating letter is deemed sufficient, such would be in complete disregard for the law, i.e., § 4–301, which requires written notice of dishonor. We do not agree with appellee; because first, the validity of the operating letter in question as being within the sphere of the Federal Reserve System was not an issue raised in the trial court and will not be passed upon on appeal, and second, the Uniform Commercial Code specifically provides that the provisions of Article 4 of the UCC (Bank Deposits and Collections) can be varied by Federal Reserve regulations and operating letters.

Title 12A O.S.1971 § 4–103 reads in part as follows:

"(1) The effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not mainfestly unreasonable.

"(2) Federal Reserve regulations and operating letters, clearing house rules, and the like, have the effect of agreements under subsection (1), whether or not specifically assented to by all parties interested in items handled.

"(3) Action or non-action approved by this Article or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care

ment or unless it bears on its face the legend, 'DO NOT WIRE NON-PAYMENT', of a Federal Reserve Bank or of a preceding bank endorser. Include in the advice of nonpayment, the amount of the item, the reason for nonpayment, the date of our cash letter, the name of the drawer or maker, and the names of the two endorsers immediately preceding the Federal Reserve Bank or their A.B.A. transit numbers, if any.

(d) DO NOT WIRE ADVICE of nonpayment of:

(i) any item of less than $2,500, or

(ii) any item of $2,500 or over unless such advice is required by subparagraph (c).

"19. DO NOT PROTEST AND DO NOT WIRE ADVICE of nonpayment of any cash item, regardless of amount, endorsed by the Treasurer of the United States, or endorsed for credit to the Treasurer of the United States, or bearing on its face or in an endorsement the legend, 'This check is in payment of an obligation to the United States and must be paid at par. N.P. Do not wire nonpayment' or words of similar import.

"20. If any sender desires to have any cash item (other than a Government check, postal money order, or food coupon)

"4. For the purposes of this operating letter, the term 'wire' includes telephone,

telegraph, and cable, or other form of electronic telecommunications."

handled by us or by any other Federal Reserve Bank under any instructions differing from the uniform instructions given above, it will be necessary for such sender to forward such item as an individual noncash item, with the instructions noted in the letter of transmittal, for collection and credit when paid, in accordance with the terms of our current operating letter relating to the collection of noncash items.

"21. This bank shall have no responsibility for determining whether any other bank has (a) made or provided for the protest of any cash item protestable under the provisions of this operating letter or (b) given any wire advice of nonpayment required under the provisions hereof.

"COMMUNICATIONS BY WIRE; COSTS AND CHARGES

"22. Telegrams pertaining to payment, nonpayment, or tracing of cash items, or in connection with receiving or transmitting pertinent information or instructions, will be sent to the extent practicable, over the Federal Reserve Leased Wire System without cost to member and nonmember clearing banks. A Federal Reserve Bank may, in its discretion, use the telephone in lieu of telegraph or cable for any purpose indicated by this paragraph. . . ."

and, in the absence of special instructions, action or non-action consistent with clearing house rules and the like or with a general banking usage not disapproved by this Article, prima facie constitutes the exercise of ordinary care. . . ."

We find that § 4–301, requiring written notice of dishonor by appellant was varied by "Operating Letter No. 3 July 1, 1974 (superseding Operating Letter No. 3 dated September 21, 1972 and Amendment dated November 1, 1972)" under the authority of 12A O.S.1971 § 4–103; and appellant's telephonic notice of dishonor was therefore sufficient on both September 24, 1974 and October 2, 1974. We therefore conclude the trial court erred in granting summary judgment to appellee.

■ The trial court found appellee's cause of action fell under 12 O.S.1971 § 936[3] that is, it was a "civil action to recover on . . . [a] negotiable instrument" and awarded appellee $1,500 as attorney's fees.

Appellant's third proposition of error urges appellee's cause of action is based on liability created by statute for failure to give legal notice of dishonor of a demand item and *is not* a suit "to recover on a negotiable instrument" falling under § 936. Appellee, however, argues its suit "is clearly an action to recover on a negotiable instrument, to-wit: check number 655," and is therefore under § 936.

The cases cited in the briefs involve suits to recover on negotiable instruments and open accounts. As we view this lawsuit, it is a suit to recover for failure to validly dishonor a check, and as such, is not a suit to recover on the instrument itself. We note appellee did not attach copies of the checks to its petition as required by 12 O.S.1971 § 296, a procedure which is usually done in actions to recover on such an instrument. Also, the essence of appellee's petition is that it presented the checks for payment to appellant and appellant "retained the said items beyond midnight of the banking date of receipt without settling for them, or returning said items or sending notice of dishonor until after its midnight deadline." It is true the amount of damages sought is the amount of the check, which is the amount a payor bank is accountable for under 12A O.S.1971 § 4–302; however, it still is not a suit to recover on the check, but is to recover damages for the wrongful manner in which the check was allegedly handled by appellant. Thus, the cases cited in the briefs are distinguishably inapplicable. We therefore conclude the trial court erred in finding the action was within § 936 and in awarding appellee attorney's fees.

The case as to check number 655 is reversed and remanded to the trial court with directions to vacate the judgment entered and to enter judgment for appellant in accordance with the views expressed herein, and is affirmed as to checks numbers 650 and 652.

BRIGHTMIRE, J., concurs.

NEPTUNE, Judge (concurring in part and dissenting in part).

I would affirm the judgment awarding attorney's fees as being within the purview of § 936.

---

3. Title 12 O.S.1971 § 936 reads:
"In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject [of] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."