**PHILADELPHIA GEAR CORPORATION,**
Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, a national corporation, in its official capacity as Receiver of Penn Square Bank, N.A. and Deposit Insurance National Bank of Oklahoma City, a national banking association, Defendants.**

**No. CIV–82–1191–W.**

United States District Court,
W.D. Oklahoma.

May 17, 1984.

Walter B. Stuart, IV and Gerald F. Slattery, Jr., Gordon, Arata, McCollam & Stuart, New Orleans, La., William B. Rogers and R. Steven Haught, Ames, Daugherty, Black, Ashabranner, Rogers & Fowler, Oklahoma City, Okl., for plaintiff.

James Vogt and Ross A. Plourde, Reynolds, Ridings & Hargis, Oklahoma City, Okl., Donald B. McKinley, Sr. Atty., Federal Deposit Ins. Corp., Washington, D.C., for defendants.

## ORDER

LEE R. WEST, District Judge.

This matter was tried to the bench on September 20 and 21, 1983, and the Court entered its Findings of Fact and Conclusions of Law and Judgment on February 9, 1984. Before the Court now are two post-trial motions. Specifically, the plaintiff has moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) and for an award of attorneys' fees. The defendants have responded in opposition to both. For the reasons that follow, the former motion is granted in part and denied in part, and the latter motion is denied.

### I

First, the plaintiff seeks to alter or amend the judgment in two respects: to specify the date of the maturity of the credit, from which time it is entitled to interest from the FDIC in its corporate capacity, and to order the FDIC in its capacity as receiver to remit to the plaintiff a receiver's certificate in the amount of $624,728.50, instead of $45,200.00. Each aspect of the motion is analyzed in turn.

### A

■ As to the latter, the plaintiff in effect requests the Court to abandon its determination that letter of credit 1042 is limited to $145,200.00. Findings of Fact and Conclusions of Law 8–11 (Feb. 9, 1984).

Rather, the plaintiff contends that the credit covered the entire amount of the underlying sales contract with Orion Manufacturing Corporation and, consequently, that all of the drafts (less the insured amount of $100,000.00) constitute a claim against the receiver. The Court is unconvinced; accordingly, this aspect of the motion to alter or amend is denied.

### B

■ Next, in the judgment, the Court directed the FDIC in its corporate capacity to pay interest on the award of deposit insurance "from the date of the maturity of the credit ..." Judgment (Feb. 9, 1984). The plaintiff correctly argues that that date is July 12, 1982. As this Court previously found, on Wednesday, July 7, 1982, the plaintiff presented to the receiver for payment three complying drafts on letter of credit 1042 in the total amount of $242,-370.00. Findings of Fact and Conclusions of Law, *supra*, at 4–5. Under the Oklahoma Commercial Code, *see id.* at 6–8, the receiver had until the close of the third banking day following receipt of the drafts within which to honor them, unless the presenter expressly or impliedly consented to more time.[1] 12A Okla.Stat. § 5–112(1). Failure to honor within this time frame constitutes dishonor of the drafts and of the credit itself. *Id.* Thus, the receiver had until Monday, July 12, 1982, to honor the plaintiff's drafts. At that time, the credit matured.

### C

■ Finally, the Court notes *sua sponte* that the rate of prejudgment interest is not specified in the judgment. That rate is six percent (6%). In the absence of a federal statute setting the rate of prejudgment interest, federal courts look to the law of the forum state to give substance to the federal common law. *See Tosco Corp. v. FDIC,* 723 F.2d 1242, 1249

---

**1.** None of the parties claim that the plaintiff consented to such an extension, so this provision is irrelevant.

(6th Cir. 1983); *Dependahl v. Fallstaff Brewing Corp.*, 653 F.2d 1208, 1219 (8th Cir.1981); *First Empire Bank-New York v. FDIC*, 634 F.2d 1222, 1224–25 (9th Cir. 1980); *West v. Harris*, 573 F.2d 873, 882–84 (5th Cir.1978). *See generally* Note, *Interest in Judgments Against the Federal Government: The Need for Full Compensation*, 91 Yale L.J. 297, 306–309 (1981). In Oklahoma, prejudgment interest on a contract claim, when allowable, is set by law at six percent. *See* 15 Okla.Stat. § 266 (1981); 23 Okla.Stat. § 6. *See generally* Note, *Prejudgment Interest in Oklahoma*, 34 Okla.L.Rev. 643 (1981).

## II

Second, the plaintiff seeks from the defendants an award of attorneys' fees incurred in connection with this action. This request is without merit and is denied.

### A

■ The general, so-called "American rule" is that attorneys' fees are not recoverable by the prevailing litigant in the absence of statutory authorization or an enforceable contract allowing them. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247–57, 95 S.Ct. 1612, 1616–21, 44 L.Ed.2d 141 (1975). *Accord Garner v. City of Tulsa*, 651 P.2d 1325 (Okl.1982); *Puckett v. Southeast Plaza Bank*, 620 P.2d 461 (Okl.App.1980). In analyzing the allowability of fees in the instant case, it must be noted that the FDIC is being sued in two different capacities, as receiver and as corporate insurer of deposits, and that judgments against them are satisfied from two different sources, the estate of the failed Bank and the federal deposit insurance fund, respectively. Consequently, the two must be examined separately.

### B

■ First, there is no legal basis for an award of fees against the FDIC as receiver. The plaintiff's suit against the receiver is based on its wrongful dishonor of a letter of credit issued by Penn Square Bank prior to its collapse. Although this action is "deemed" to arise under federal law, 12 U.S.C. § 1819 (fourth), the substantive right involved originates in state law under the Commercial Code and is only then incorporated into the federal common law. Findings of Fact and Conclusions of Law, *supra*, at 6–8. Having looked to state law for guidance as to the rights of the plaintiff and the receiver, it is logical to look there as to their remedies as well. *See generally* 19 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4513 (1982).

■ Significantly, letter of credit 1042 at issue here does not by its terms permit an award of attorneys' fees in a wrongful dishonor action. Plaintiff's Exhibit 1; Findings of Fact and Conclusions of Law, *supra*, at 2–3.

■ Further, Oklahoma law does not provide for an award of attorneys' fees in an action for the wrongful dishonor of a letter of credit. Initially, the Commercial Code does not itself provide for such an award. 12A Okla.Stat. § 5–115(1). *See Bossier Bank & Trust Co. v. Union Planters National Bank*, 550 F.2d 1077, 1083–84 (6th Cir.1977). Secondly, neither of the two costs statutes on which the plaintiff relies allow for an award of fees in this case. Section 936 of Title 12 of the Oklahoma Statutes provides:

> In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject [of] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

12 Okla.Stat. § 936 (1981). Section 937 of Title 12 likewise permits an award of attorneys' fees to a prevailing party:

> [i]n any civil action to enforce payment of or to collect upon a check, draft, or similar bill of exchange drawn on a bank

or otherwise, payment upon which said instrument has been refused because of insufficient funds or no account ...

12 Okla.Stat. § 937.

 Neither statute expressly refers to a letter of credit, which is a unique commercial instrument. *See generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 18–2 (2d ed. 1980). Moreover, these statutes cannot properly be interpreted to include an action on a letter of credit. First, these statutes are in derogation of the common law rule against awarding fees, *see Garner v. City of Tulsa, supra,* 651 P.2d 1325; *Puckett v. Southeast Plaza Bank, supra,* 620 P.2d 461, so they should be narrowly construed, *see e.g., In re Adoption of Graves,* 481 P.2d 136, 138 (Okl.1971). *Cf. Florida National Bank v. Alfred & Ann Goldstein Foundation, Inc.,* 327 So.2d 110, 111 (Fla.App.1976) (interpreting Florida fees and costs statutes in a wrongful dishonor action). *See generally* 2A Sutherland, *Statutes and Statutory Construction* §§ 50.01, 50.02 (4th ed. 1973). Second, the statutes clearly enumerate the particular instruments to which they apply, and under the principle of statutory construction *expressio unius est exclusio alterius,* they should not be broadened by the Court to include others well outside their terms unless the legislature intends otherwise. *See In re Arbuckle Master Conservancy District v. Petitti,* 474 P.2d 385, 391–92 (Okl.1970). *See generally* 2A Sutherland, *supra,* §§ 46.23–46.-25. *Cf. Edwards v. Walden,* 595 P.2d 445 (Okl.1979) (suit to enforce a settlement agreement of a contract claim not within § 936); *Goodman v. Norman Bank of Commerce,* 565 P.2d 372 (Okl.1977) (action on bank's failure to meet its midnight deadline not within § 936); *Security Bank & Trust Co. v. Federal National Bank & Trust Co. of Shawnee,* 554 P.2d 119 (Okl. App.1976) (action challenging sufficiency of notice of dishonor of check not within § 936). *But cf. Hardesty v. Andro Corp.- Webster Division,* 555 P.2d 1030, 1035–36 (Okl.1976) (action for breach of an implied warranty is within Section 936 as a "con-tract relating to" the purchase or sale of goods or wares).

 The plaintiff contends that this is an action on a "contract relating to the purchase or sale of goods, wares, or merchandise" under Section 936 or, alternatively, one "to enforce payment of or to collect upon a check, draft, or similar bill of exchange" under Section 937. Motion to Assess Attorney's Fees and Brief in Support Thereof 2–4 (Feb. 24, 1984). This contention is unpersuasive. A letter of credit is defined in Section 5–103(1)(a) of the Oklahoma Commercial Code as

> an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article (Section 5–102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. A credit may be either revocable or irrevocable. The engagement may be either an agreement to honor or a statement that the bank or other person is authorized to honor.

12A Okla.Stat. § 5–103(1)(a). First, although the phrase "a contract relating to the purchase or sale of goods, wares, or merchandise" is broad, *see Hardesty, supra,* 555 P.2d at 1035–36, a letter of credit is not such a contract, for as between an issuer and a beneficiary it is not a contract at all. There is no offer or acceptance, and no consideration is necessary. *See* 12A Okla.Stat. §§ 5–104, 5–105. Rather, a letter of credit is an engagement to pay, contingent on the presentation of a complying draft. 12A Okla.Stat. § 5–103(1)(a). *See generally* J. White & R. Summers, *supra,* § 18–2.

Second, "check" and "draft" or "bill of exchange" are defined in Section 3–104 of the Commercial Code:

> (1) Any writing to be a negotiable instrument within this Article must
>
> (a) be signed by the maker or drawer; and
>
> (b) contain an unconditional promise or order to pay a sum certain in money

and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

(2) A writing which complies with the requirements of this section is

(a) a "draft" ("bill of exchange") if it is an order;

(b) a "check" if it is a draft drawn on a bank and payable on demand;

(c) a "certificate of deposit" if it is an acknowledgment by a bank of receipt of money with an engagement to repay it;

(d) a "note" if it is a promise other than a certificate of deposit.

(3) As used in other Articles of this Act, and as the context may require, the terms "draft", "check", "certificate of deposit" and "note" may refer to instruments which are not negotiable within this Article as well as to instruments which are so negotiable.

12A Okla.Stat. § 3–104. These Commercial Code definitions are the same as or similar to their precursors in the Uniform Negotiable Instruments Law. 12A Okla.Stat.Ann. § 3–104 (West 1963), Oklahoma Code Comments 2(a), (b). Under the NIL, a bill of exchange (or a "draft" under the UCC, § 3–104(2)(a)) was "an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer." 48 Okla.Stat. § 281 (1961) (repealed 1962 with passage of the Commercial Code). And a "check" under the NIL was "a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check." *Id.* § 402.

■ Clearly, a letter of credit is neither like a "check" nor a "draft or similar bill of exchange" under Section 937. It is not

unconditional, and it is not payable on demand or even at a definite time, really. Rather, it is a conditional engagement to pay, dependent on the presentation of a separate draft which complies with its terms. 12A Okla.Stat. § 5–103(1)(a). Ordinarily, therefore, a letter of credit is not a negotiable instrument, although a draft under a letter of credit may be. *See* J. White & R. Summers, *supra,* § 18–2; 12A Okla. Stat. §§ 3–104(1), 3–105(1)(d).

## C

Likewise, there is no legal basis for an award of attorneys' fees against the FDIC in its corporate capacity. Again, it must be stressed that the FDIC *qua* Corporation is a separate entity which the plaintiff sued to recover the insured portion of the letter of credit as an insured deposit; therefore, recovery against it is satisfied from the permanent insurance fund. *See* 12 U.S.C. § 1821(a) (1982).

Until recently, federal statutory law expressly prohibited an award of fees against an agency of the United States, except as otherwise specifically provided by statute. 28 U.S.C. § 2412 (1976). *See Alyeska Pipeline Service Co., supra,* 421 U.S. at 265–68 & nn. 40–43, 95 S.Ct. at 1626–27 & nn. 40–43. However, Congress amended the statute in 1980 as part of the Equal Access to Justice Act to allow such an award though only in certain circumstances. Act of Oct. 21, 1980, Pub.L. No. 96–481, Title II, §§ 201, 204(a), 94 Stat. 2321, 2327–29 (codified at 28 U.S.C. § 2412 (1982)) (EAJA). Section 2412(b) permits such an award to a prevailing party and against an agency of the United States, unless expressly prohibited by statute, "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). Thus, Subsection (b) simply applies to the United States the common law exceptions to the American rule, thereby permitting an award of fees in common fund cases, cases of bad faith litigation, and in cases authorized by statute. *See* H.R.Rep. No.

1418, 96th Cong., 2d Sess. 8–9, 17, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4986–87, 4996; H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 25, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5003, 5014. In addition, Section 2412(d) is an experimental general rule permitting an award of fees to certain eligible prevailing parties against the United States unless its position "was substantially justified or … special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A), (d)(2)(B). In order to be eligible, a corporate party must have a net worth of less than $5 million or employ less than 500 employees at the time the action was filed, *id.* § 2412(d)(2)(B), and the burden is on that party to establish its eligibility, *id.* § 2412(d)(1)(B).

1

■■■■■ In the case at bar, the Court directed the parties to submit briefs on the allowability of fees under the EAJA, which they did not address in their earlier submissions. Order (March 29, 1984). In its supplemental brief, the plaintiff argues that it should be awarded its fees under a common fund or a common benefit theory pursuant to Section 2412(b).[2] Plaintiff's Supplemental Brief in Support of Motion to Assess Attorney's Fees (April 9, 1984). First, this argument misconceives the nature of the common fund exception. That exception permits an award of fees from the fund which is generated by the litigation, not separately and additionally from the defendants. The rationale underpinning that exception, borne out of equity, is that the beneficiaries of the fund should equally pay the fees of counsel, or else they would be unjustly enriched in relation to those who did pay. *See e.g., Alyeska Pipeline Service Co., supra,* 421 U.S. at 257–58 & n. 30, 95 S.Ct. at 1621–22 & n. 30. *See generally* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2675 at 266–73 (1983 & Supp.1984). Here, there is no common fund; rather, the plaintiff alone has prevailed in its claim to $100,000.00 in

deposit insurance from the Corporation. Therefore, even if the Court were to grant the plaintiff its fees from that "fund", there would be no fee shifting.

2

■■■ Secondly, the common benefit exception does not apply either. In general, this exception is an extension of the common fund exception and is animated by the same equitable rationale. *See Hall v. Cole,* 412 U.S. 1, 4–9, 93 S.Ct. 1943, 1945–1948, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 389–97, 90 S.Ct. 616, 624–28, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic Bank,* 307 U.S. 161, 164–67, 59 S.Ct. 777, 779–80, 83 L.Ed. 1184 (1939). In particular, the common benefit exception involves cases in which the prevailing plaintiff confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them", *Mills v. Electric Auto-Lite, supra,* 396 U.S. at 393–94, 90 S.Ct. at 626–27, even if the benefit conferred is not monetary in nature, *Hall v. Cole, supra,* 412 U.S. at 7–9, 93 S.Ct. at 1947–1948.

*Sprague v. Ticonic Bank, supra,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184, aptly illustrates the common benefit exception. There, Lottie Sprague sued individually to impress an equitable lien on the proceeds of certain bonds securing her trust deposit (as well as fourteen others' trust deposits) at the Ticonic National Bank of Waterville, Maine, which failed on August 3, 1931. She ultimately prevailed. 14 F.Supp. 900 (D.Me.1936), *aff'd in part and modified in part,* 87 F.2d 365 (1st Cir.1937) (*per curiam*), *aff'd on rehearing,* 90 F.2d 641 (1st Cir.1937), *aff'd,* 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926 (1938). By establishing her own claim, Ms. Sprague established the claims of the fourteen others who had trust deposits at the failed bank through the doctrine of *stare decisis.* 307 U.S. at 162–

2. Presumably, the plaintiff does not qualify for an award under Section 2412(d), for it has

failed to make the showing required by Section 2412(d)(1)(B), (d)(2)(B).

63, 166–67, 59 S.Ct. at 780. Even though she neither sued on behalf of the class of trust depositors nor created a common fund, she conferred a real and substantial benefit on them; consequently, the court in equity was able to order reimbursement of her attorney's fees from the bond proceeds, out of which the others would ultimately satisfy their claims. *Id.* at 166–67, 170, 59 S.Ct. at 780, 781.

■ The case at bar stands in marked contrast. Here, the plaintiff did set a precedent, that its letter of credit, secured by a promissory note on which the customer for whom the credit was issued was primarily liable, is an insured deposit under the Federal Deposit Insurance Act, 12 U.S.C. § 1813(*l*)(1). Findings of Fact and Conclusions of Law, *supra*, at 19–22. However, that determination was clearly fact-based; all other claimants will have to prove their own cases in order to qualify for deposit insurance. Thus, they will not be directly benefited like the trust depositors in *Sprague.* Additionally, the class of potential beneficiaries in the instant case is not ascertainable, so the Court cannot equitably apportion the plaintiff's fees among them. Finally, the plaintiff does not seek to shift the costs of its litigation to the purported beneficiaries, but to the FDIC's Permanent Insurance Fund, the undifferentiated pool out of which all deposit insurance claims are paid. In sum, the Court in equity is not convinced that "circumstances make ... an award [of fees] appropriate ..." *Mills v. Electric Auto-Lite, supra,* 396 U.S. at 391, 90 S.Ct. at 625.

### III

Accordingly, the plaintiff's motion to alter or amend the judgment is granted in part and denied in part, and its motion for an award of attorneys' fees is denied. The amended judgment is filed concurrently with this opinion.

### AMENDED JUDGMENT

In accordance with this Court's Findings of Fact and Conclusions of Law filed on February 9, 1984, and this Court's Order on the plaintiff's motion to alter or amend filed this day, amended judgment is hereby entered in favor of the plaintiff Philadelphia Gear Corporation against the defendant Federal Deposit Insurance Corporation in its corporate capacity for one hundred thousand dollars ($100,000.00) in deposit insurance and against the FDIC in its capacity as receiver for the balance of forty-five thousand two hundred dollars ($45,200.00) in the form of a receiver's certificate. Furthermore, the plaintiff is entitled to interest at the legal rate of six percent (6%), one, from the FDIC in its corporate capacity from the date of maturity of the credit, July 12, 1984, and, two, from the FDIC as receiver from the date of the first distribution from the estate of the failed bank. Finally, the plaintiff shall release to the FDIC the goods involved in the underlying transaction with Orion (at least up to a value of $145,200.00).